CRAIG CARPENITO
United States Attorney
MICHAEL E. CAMPION
SUSAN MILLENKY
Assistant U.S. Attorneys
970 Broad Street, Suite 700
Newark, NJ 07102
Tel: (973) 645-3141

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>  Plaintiff,<br><br>  v.<br><br>**BOROUGH OF WOODCLIFF LAKE** and **WOODCLIFF LAKE ZONING BOARD OF ADJUSTMENT**,<br><br>  Defendants. | Civil Action No.<br><br>**COMPLAINT** |

The United States of America, by its undersigned attorneys, files this Complaint and alleges:

## INTRODUCTION

1. The United States of America brings this civil action against defendants the Borough of Woodcliff Lake (the "Borough") and the Woodcliff Lake Zoning Board of Adjustment (collectively, "Defendants"), for violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5, based on the Defendants' denial of Valley Chabad's variance application to construct a house of worship.

2. Valley Chabad has operated a house of worship out of a house on a 1.27-acre site in the Borough since 1998, and the space is no longer adequate to serve its religious needs. The United States alleges that Defendants took actions that prevented Valley Chabad from purchasing alternative sites in the Borough over an eight-year period, and then denied Valley Chabad's efforts to expand on its current site, thus imposing a substantial burden on its religious exercise in violation of RLUIPA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 2000cc-2(f).

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the District of New Jersey.

## PARTIES

5. The Borough is a municipality in Bergen County, New Jersey.

6. The Borough has a six-member borough council, elected at large to serve staggered three-year terms, and a mayor elected to a four-year term. The council serves all legislative functions in the Borough; the mayor may cast a vote in the event of a tie.

7. The Borough has the authority to regulate and restrict the use of land and structures within its borders.

8. Defendant the Woodcliff Lake Zoning Board of Adjustment ("Zoning Board") is an agency of the Borough. The seven-member Zoning Board rules on

variances applications, interprets the Chapter 380 of the Municipal Code, which governs zoning in the Borough, and hears appeals from enforcement of the zoning code.

9. For purposes of RLUIPA, the Borough and the Zoning Board each constitute a "government." 42 U.S.C. §§ 2000cc-5(4)(A)(i), (ii).

10. The Borough is responsible for the acts and omissions of its agents and agencies, including the Zoning Board.

## FACTS

### Valley Chabad

11. Valley Chabad is a non-profit entity incorporated and existing under the laws of the State of New Jersey. Valley Chabad is a "religious assembly or institution" within the meaning of RLUIPA. 42 U.S.C. § 2000cc(a)(1).

12. Valley Chabad is an Orthodox Jewish congregation founded in 1996 and affiliated with the Chabad-Lubavitch Hassidic movement. Valley Chabad is part of a religious tradition of Chabad houses that host traditional prayer services and serve as an inclusive religious and cultural center for the nearby Jewish community. Chabad houses provide community members with a single home for all activities that adherents believe are a part of religious life.

13. The Valley Chabad community is centered in and around the Borough of Woodcliff Lake.

14. The Valley Chabad community adheres to a holistic approach to worship in which the community prays together, provides religious education, hosts social

3

events, conducts bar and bat mitzvahs, and offers other lectures and learning opportunities at a single location. The Valley Chabad community believes that a location that serves only one of those functions is insufficient to accommodate the exercise of its religious beliefs.

15. Valley Chabad places particular importance on a mikvah, a ritual immersion bath for women that the Valley Chabad community believes is central to Orthodox Jewish life.

16. The Valley Chabad community believes that the Torah is central to a Jewish community and that adherents should travel to the Torah. Valley Chabad believes that moving the Torah for use at fewer than three prayer services creates complications under Jewish law.

17. Since 2000, Rabbi Dov Drizin has led Valley Chabad.

18. In the early 2000s, the Valley Chabad community, through conversations between Rabbi Drizin and a Borough official, became aware of concerns that its presence would transform the Borough into a town similar to Monsey, New York. The Borough official asked Rabbi Drizin for a letter that would explain how Valley Chabad differed from the religious community in Monsey.

19. Monsey, New York is a municipality with a large observant Jewish population located approximately seven miles from the Borough.

**The Subject Property at 100 Overlook Drive**

20. 100 Overlook Drive is a 1.27-acre parcel of land in Woodcliff Lake located a district zoned R-30 residential.

4

21. The Garden State Parkway, which is owned and operated by the New Jersey Turnpike Authority, borders 100 Overlook Drive to the east. To the west of the property, across Overlook Drive, sit two private homes and Temple Emanuel, a conservative Jewish synagogue that occupies a fifteen-acre lot. The northern edge of the property consists of vacant, wooded land owned by the New Jersey Turnpike Authority that serves as a buffer from the Garden State Parkway. The property's southern edge borders a small farm.

22. Valley Chabad has used the house located at 100 Overlook Drive, which is approximately 3,194 square feet and one-and-a-half stories tall, since 1998.

23. The Valley Chabad community cannot conduct the activities central to its religious worship at Valley Chabad's current facility located at 100 Overlook Drive. Hebrew school classes, certain holiday services, community events, weddings, and many bar and bat mitzvahs are held offsite at various rental locations.

24. The facility located at 100 Overlook Drive does not have a mikvah.

25. The Valley Chabad community must move its Torah to other locations for certain bar mitzvahs and holidays.

26. Valley Chabad and its members cannot fully and adequately practice their religion due to the constraints of its current facility at 100 Overlook Drive.

## Attempts to Relocate

27. The Valley Chabad community began to search for a new location for a new house of worship within the Borough in or around 2005.

28. Since that time, the Borough's Municipal Code has prohibited houses of worship from all zoning districts other than residential zones. In residential zones, the Municipal Code allows houses of worship as a conditional permitted use so long as an applicant meets nine requirements, including a minimum lot size of three acres, one parking space for every three seats, plus one space for each staff member, a 400-foot lot width, as well as other requirements regarding building setbacks, building height, and surface coverage.

29. On or around September 25, 2006, Valley Chabad entered into a contract to purchase a 3.89-acre property located at 75 Werimus Road in Woodcliff Lake. After a Borough Council member expressed interest in the Borough's acquisition of the property by eminent domain, Valley Chabad canceled the contract.

30. In or around 2010, the Borough acquired the property located at 75 Werimus Road.

31. Valley Chabad then negotiated with the owners of three adjacent properties located at 28 County Road, 34 County Road, and 40 County Road (together, the "County Road Properties") in the Borough that together exceeded 3 acres. In or around May 2011, Valley Chabad entered into a contract to purchase the property located at 28 County Road.

32. After Valley Chabad began to negotiate with the owners of the County Road Properties, the Borough expressed interest in creating a zoning overlay that would include the County Road Properties and permit the development of townhomes on those properties.

33. On or around September 21, 2012, the seller of 28 County Road canceled the contract of sale with Valley Chabad. Upon information and belief, the seller canceled the contract to obtain more money for the property from developers of townhomes.

34. The Borough enacted an ordinance that permitted a "Townhome Overlay District" on July 14, 2014.

35. There are currently townhomes on the County Road Properties.

36. In late 2012, Valley Chabad began to explore relocating to Galaxy Gardens, a 2.1-acre property located at 223 Woodcliff Ave in the Borough that was in a residential zone but did not border any residential properties.

37. On June 19, 2013, Valley Chabad entered into a contract to purchase Galaxy Gardens.

38. The same day that news of Valley Chabad's planned purchase of Galaxy Gardens became public, a web page with the headline "Jewish Regional Hub to Woodcliff Lake" was created, featuring a picture of two rabbis praying that was taken from Valley Chabad's website.

39. A group called Concerned Neighbors & Residents of Woodcliff Lake, Inc. formed to oppose the purchase of Galaxy Gardens.

40. Valley Chabad's planned relocation to Galaxy Gardens was discussed during an October 21, 2013 Mayor and Council meeting.

41. According to the minutes of the October 21, 2013 Mayor and Council meeting, one council member cited "scare tactics" used in mailings about Valley

Chabad's plans for Galaxy Gardens. Another Council member said of the proposed purchase: "We are Woodcliff Lake residents and we do not want the character of the town to change." A third council member asked the Borough to "try and save this piece of property and use it to beautify and enhance our town."

42. Upon information and belief, the Borough had not taken any steps to acquire Galaxy Gardens prior to Valley Chabad's efforts to purchase the Galaxy Gardens property.

43. At the end of the October 21, 2013 meeting, the Council voted to authorize a grant for funding to acquire Galaxy Gardens for use as open space. By early 2014, the Borough expressed interest in acquiring Galaxy Gardens by eminent domain.

44. In late 2013 or early 2014, Valley Chabad's contract to purchase Galaxy Gardens was canceled.

45. On February 1, 2018, the Borough council voted 4 to 3, with Mayor Carlos Rendo casting the tie-breaking vote, to approve the $1.65 million purchase of Galaxy Gardens by the Borough.

## Valley Chabad's Zoning Board Application

46. By 2014, Valley Chabad believed that it would be unable to relocate within Woodcliff Lake and began to explore expansion on its existing property at 100 Overlook Drive.

8

47. In October 2014, Valley Chabad submitted a variance application to the Zoning Board to remove the existing 3,194-square-foot structure at 100 Overlook Drive and to construct a new 17,728-square-foot house of worship.

48. The proposed house of worship included a mikvah and space for holiday services, Hebrew school classes, weddings, bar and bat mitzvahs, and community events.

49. Valley Chabad's October 2014 application to the Zoning Board listed five design waivers and fourteen variances. The requested variances consisted of departures from the conditions required for houses of worship, such as the requirement that houses of worship sit on three acres of land and have a lot width of 400 feet, and proposed deviations from generally applicable zoning ordinances, such as those that govern critical slope areas.

50. From December 2014 to August 2016, the Zoning Board held 18 hearings that addressed or considered Valley Chabad's variance application.

51. Beginning in February 2015, an objector group called Woodcliff Lake Residents for Redevelopment, Inc. appeared with counsel at Zoning Board hearings to oppose Valley Chabad's variance application.

52. In 2015 and 2016, Valley Chabad revised its application at least four times in response to concerns expressed by Zoning Board officials and citizens at the hearings. Those revisions included shrinking the proposed house of worship from 17,728 square feet to 12,247 square feet, removing a proposed deck that would serve as a children's play area, lowering the height of the building from 44 feet to 33 feet,

9

increasing setbacks from property lines, and increasing driveway widths to facilitate emergency vehicle access.

53. Rabbi Dov Drizin testified at two Zoning Board hearings. During a May 2015 Zoning Board hearing, counsel for the objector group questioned the rabbi about what counsel described as Valley Chabad's plan to "grow exponentially" and quoted a 2006 news article about the group's outreach to the 13,627 Jewish individuals who live in the Pascack Valley area.

54. Rabbi Drizin and other Valley Chabad witnesses testified that the sanctuary would rarely be used for the proposed maximum occupancy of 219 people, that Valley Chabad needed minimal staff while the sanctuary was in use, and other areas of the proposed house of worship, such as areas for religious education, would not be used at the same time prayer services were held in the sanctuary.

55. During the May 2015 hearing, Rabbi Drizin expressed Valley Chabad's willingness to keep attendance at the numbers proposed by Valley Chabad through selling tickets or pre-registration, and testified that such methods had been successful in the past.

56. The only Woodcliff Lake resident who lived adjacent to 100 Overlook Drive, the owner of the farm immediately to the south, had no objection to Valley Chabad's proposed construction or to the proposed retaining wall that would border his property.

57. On August 23, 2016, the Zoning Board denied Valley Chabad's variance application by a unanimous vote.

58. Zoning Board Resolution 16-07, of August 23, 2016, adopted October 6, 2016, denied Valley Chabad's variance application.

59. Resolution 16-07 cited the "detrimental visual impact" of the proposed retaining wall and the adverse impact of the proposed house of worship on the "residential character of the neighborhood."

60. Resolution 16-07 stated the Zoning Board's finding that Valley Chabad was "unlikely" to limit sanctuary occupancy to the proposed number of 219 and that "Rabbi Drizin testified that he had tried to limit occupancy with pre-registration or selling tickets, but such efforts were not successful."

61. Rabbi Drizin did not testify that prior efforts to limit occupancy were unsuccessful. During the May 2015 meeting, Rabbi Drizin testified that, as Valley Chabad had grown, it had sold tickets or asked for preregistration for holidays and when they learned in advance that attendance would exceed capacity, the group moved to a different location.

62. Resolution 16-07 included the Zoning Board's finding that the proposed 73 parking spaces were inadequate for the 383 people that could hypothetically occupy the proposed house of worship.

63. Valley Chabad proposed a maximum occupancy of 219 people, not 383 people. Valley Chabad agreed to limit occupancy to 219 people, including by staggering event start times, requiring pre-registration for events, and holding events at another location if necessary.

64. In support of the finding that 73 parking spaces were inadequate, Resolution 16-07 also included the Zoning Board's finding that "[t]here is no street parking on Overlook Drive."

65. Parking was permitted on Overlook Drive when Valley Chabad submitted its variance application in 2014. In or around March 2016, the Borough enacted a resolution that prohibited parking on Overlook Drive.

66. Resolution 16-07 concluded that the proposed development was "likely to cause additional erosion and flooding of the Muskquapsink Brook." The Zoning Board's engineer previously testified that Valley Chabad's proposed storm water management plan complied with all state requirements.

67. Resolution 16-07 stated that Valley Chabad had not obtained the required consent and approval of the New Jersey Turnpike Authority, which owns the land that borders 100 Overlook Drive to the east and north, for the proposed drainage plan. The chairperson of the Zoning Board had previously expressed her understanding that the New Jersey Turnpike Authority would evaluate Valley Chabad's proposal after the Zoning Board had decided the variance application.

68. On prior occasions, the Zoning Board has approved variance applications conditioned on approval from other public entities.

69. In Resolution 16-07, the Zoning Board suggested six alternative properties for Valley Chabad's proposed relocation. One property was not located in Woodcliff Lake, another was not three acres, one occupied a wetland area where building was not permitted, one was unsuited for individuals who walk to religious

services, and, upon information and belief, the others were not on the market at the time Valley Chabad submitted its variance application in 2014.

71. The Zoning Board's processing of Valley Chabad's variance application, and the manner in which it evaluated the application, has caused Valley Chabad to suffer delay, expense, and uncertainty regarding its efforts to obtain approval for its house of worship.

72. The Zoning Board's denial of Valley Chabad's variance application has caused Valley Chabad to suffer significant financial loss, including, but not limited to, attorneys' fees and professional fees.

73. Valley Chabad had a reasonable expectation that its variance application for its house of worship would be approved by the Zoning Board.

74. Due to the lack of residentially zoned property for sale in the Borough and to the actions of the Borough recounted above, there are no readily available alternatives to the 100 Overlook Drive property for Valley Chabad to engage in religious activity in the Borough.

75. The variances requested by Valley Chabad in its variance application do not present a threat to any compelling governmental interest of the Borough.

76. The Zoning Board's denial of Valley Chabad's variance application was absolute.

77. The Zoning Board could have approved Valley Chabad's variance application with conditions that addressed the Borough's purported concerns about traffic, parking, erosion, flooding, and other supposed impacts, but did not do so.

78. The Zoning Board did not use the least restrictive means of addressing its purported concerns about traffic, parking, erosion, flooding, and other supposed impacts when it denied Valley Chabad's variance application.

79. Valley Chabad's efforts to establish a place of worship in the Borough constitutes "religious exercise" within the meaning of 42 U.S.C. § 2000cc-5(7).

80. The Zoning Board made an "individualized assessment" of Valley Chabad's variance application to establish a house of worship within the meaning of 42 U.S.C. § 2000cc(a)(2)(C).

81. The Zoning Board's denial of Valley Chabad's variance application affects "commerce among the several States" within the meaning of 42 U.S.C. § 2000cc(a)(2)(B).

### RLUIPA – Substantial Burden

82. The allegations set forth in the preceding paragraphs are incorporated by reference.

83. Valley Chabad's inability to relocate within Woodcliff Lake and the denial of its variance application, by the actions of the Defendants, have imposed a substantial burden on its religious exercise in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(1).

84. The policies and practices of the Zoning Board and the Borough in handling religious land use applications give rise to the likelihood of future unlawful conduct and the imposition of a substantial burden in the handling of future religious land use applications.

**WHEREFORE**, the United States seeks that this Court enter an order that:

1. Declares that the Defendants' denial of Valley Chabad's variance application, as alleged herein, violates RLUIPA;

2. Enjoins the Defendants, their officers, employees, agents, successors and all other persons in concert or participation with them, from imposing a substantial burden on the religious exercise of Valley Chabad and its members, and any other religious entities and institutions and their members, that is not narrowly tailored to serve a compelling governmental interest;

3. Requires the Defendants, their officers, employees, agents, successors, and all other persons in concert or participation with them, to:

    a. Take actions necessary to restore, as nearly as practicable, Valley Chabad and its members to the position they would have been in but for Defendants' unlawful conduct, including but not limited to granting the necessary approvals for Valley Chabad to use 100 Overlook Drive as a place of worship; and,

    b. Take actions necessary to prevent the recurrence of such unlawful conduct in the future, including but not limited to providing RLUIPA training to their personnel, establishing procedures to address complaints of RLUIPA violations, and maintaining records and submitting reports relating to RLUIPA compliance; and

4. Awards such additional relief as the interests of justice may require, together with the United States' costs.

Dated: June 13, 2018

                                      Respectfully submitted,

                      By:    /s/ John M. Gore
                            JOHN M. GORE
                            Acting Assistant Attorney General
                            Civil Rights Division

                            CRAIG CARPENITO
                            United States Attorney

                    By:    /s/ Michael E. Campion
                            MICHAEL E. CAMPION
                            Chief, Civil Rights Unit
                            Assistant United States Attorney
                            970 Broad Street, Suite 700
                            Newark, NJ 07102
                            Phone: (973) 645-3141
                            Email: michael.campion@usdoj.gov

                    By:    /s/ Susan Millenky
                            SUSAN MILLENKY
                            Assistant United States Attorney
                            District of New Jersey
                            970 Broad Street, Suite 700
                            Newark, NJ 07102
                            Phone: (973) 297-2067
                            Email: susan.millenky@usdoj.gov

                            Attorneys for Plaintiff
                            United States of America

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.